Tiru-Plaza Good morning, Your Honors. My name is Hayne Barnwell. I represent Jose Tiru-Plaza. May I reserve one minute for rebuttal? You may. Thank you. This suppression case illustrates the danger of adopting what essentially amounts to the Although the district court stated it was applying the totality of circumstances test, it also stressed that the most essential factor legitimizing Tiru-Plaza's pap frisk was that Morales, the driver of the car, had a firearm. In fact, the police testified to the discovery of Morales's firearm as the sole reason for ordering Tiru-Plaza, a backseat passenger, out of the car. Let me see if I can understand what you mean by the automatic companion rule. I had understood that rule to mean that if you can pap frisk the driver, then you can pap frisk automatically the companion. I believe the firearm has to also be involved, so the pap frisk, you know, would reveal something of that nature, and so therefore all of the passengers can also be pap frisked for that reason. Okay, so you're defining it as limited to the situations in which the first pap frisk results in the discovery of a firearm. I believe so. I believe that's how it works, that the pap frisk actually has to reveal a firearm on the driver, or let's say a passenger, and then everyone else in the car can be pap frisked for that reason. It's basically sort of an automatic suspicion that everyone else is armed. And here, nothing else impressed the police as suspicious or calls for further safety concern as directed to Tiru-Plaza. In fact, there was nothing else suspicious by the car occupants. They were fully cooperative. There's no evidence of any commotion, evasive movements, no bulge, nothing like that. We simply have what the government contends really is the automatic companion role, and even though the government also... What's wrong with the automatic companion role? I mean, I understand Ibarra talking about people in a bar can't be under suspicion simply because they're attending the bar, but isn't it arguable that being a passenger in a car has a closer relationship with the driver than the bar patrons in Ibarra? And isn't there a reasonable suspicion that if the driver is armed, that there's a good possibility that the passengers are armed also? I have two responses to that. The first question is a general principle, why can't the automatic companion role work? And it's because the reasonable suspicion requirement would essentially then be eviscerated, because the reasonable suspicion requirement is that there are specific articulable facts directed, and Ibarra makes clear to point this out, directed at the person to be pat for his search. And here it's only directed, the only suspicion here is directed towards Morales. There's again nothing, there's no testimony whatsoever about Tiro Plaza's behavior or any concern about Tiro Plaza. It's simply a knee-jerk reaction. Morales has a gun, let's arrest everyone, at least what the police testified to. You're certainly right, there's nothing about his behavior that they're relying on, except for the behavior that he's in a car with a driver who's got a firearm, a concealed firearm on him. So that is individualized as to him, it distinguishes him from someone outside the car. And so the question goes back to why isn't that enough individualized suspicion where we're talking about officer safety here, and you frisk one person, you find a gun on him, you then have to hope the other person doesn't have a gun. Well that only shows that he was on basically an ill-starred trip, as another district court put it, with Morales, because there's no evidence that he knew that Morales had a firearm. Morales had it tucked in his waistband. It wasn't discovered until he lifted his arms with the engine hood. And so really all that shows is that it's really guilt by association, which the Fourth Amendment absolutely condemns. Let me ask you about that, because under Wyoming v. Houghton, if the police can stop the passenger, the driver, and search his car, as I understand it, they can also search a container that the passenger has, merely because they're authorized to search the driver's car. Well once there's probable cause to search a car, then that deals with the property and the area of the car, but that doesn't go to the person. The person has his or her own physical integrity and personal security, and that's exactly why before a pat-down can happen of the person, the person has to be, there must be a reasonable belief that that person is armed and dangerous, and we simply don't have that here. What's a police officer to do? Let's assume there are two people in the car, and the driver is patted down legitimately, and a weapon is discovered. What are the officers supposed to do with respect to the passenger under those circumstances? Isn't there a risk that the passenger would be armed, and that the officers might be injured as a result of some conduct by the passenger? Well that gets to Arizona v. Johnson. The Supreme Court has held that the police are entitled during a traffic stop, and certainly that type of situation, they can order everyone out of the car, and that's exactly what they did here. Not only did they order everyone out of the car, they had the guns pointed at all the occupants, so they were in full control of the situation. They also called for backup, so they didn't need to do that further step, and of course Terry is a two-step inquiry. It's not just can you order everyone out of the car, it's now that you're thinking about the further step of a pat-down, do you actually have some specific facts we can go on that this person is armed and dangerous, and we don't have that here, and you can really see the problem with it because the police have this, the police in Puerto Rico at least seem to have this policy, which is revealed in this case in the Matias Maestros case, where it's okay, gun found on one of them, it's just automatic. We're just going to get everyone out of the car and pat down everyone. That's the policy, and what's interesting if you read the police testimony is it's not just concern for themselves, the way they testified to is we're concerned about them too, the occupants of the car. Well the Fourth Amendment totally rejects that kind of paternalistic notion that the police can pat you down for your own good. That's not what the Fourth Amendment allows. The Fourth Amendment does not allow such invasion of that bodily integrity because well, we just want to make sure everyone's safe. No, there have to be specific facts. Your point, as I understand your response to Judge Dyke, you're saying the way the police are limited to taking care of their safety is they need to keep a sharp eye out on the passenger and see if he's making any furtive movements or hold a gun on him the whole time. That's how they protect themselves. They can, as Arizona versus Johnson points out, they can order everyone out of the car. Right, but all of that would apply to the driver as well. In other words, we could say they could order the driver out of the car, they could keep a gun on him, they could be watching him, and yet we know that in this situation we're assuming that they had a right to pat first the driver precisely to protect their safety. And once they then actually find a gun on the driver, isn't an officer going to start getting a lot more concerned about what the driver's wingman is doing there while he's watching? Well, I do want to quickly point out that they didn't pat first Morales right away. They saw the gun. Right, they saw the gun first. So they basically did all the right things at first, they just got him out of the car, and there was a detention there at first anyway. But then they took that next step when they saw the firearm, they yelled out ARMA, and what's interesting is they didn't order, or at least at first they didn't order the female passengers out of the car, they only ordered my client out of the car, and then just proceeded to pat him down immediately. There was no sort of division there where, let's say if they had ordered everyone out of the car and Tiro Plaza was acting evasive, or he's maybe clutching something, there's a bulge. I mean, there are a line of cases in which this court does give a lot of ground for police to protect safety and to do a pat down in those circumstances, but we have absolutely nothing like that here. Well it seems to me that once they're out of the car, they really are even more dangerous because they are able to access a weapon they're carrying in an easier way. You've left something out too, that is, it's 11 o'clock at night, and when they come out of the car, it's four people versus two policemen. They're four people versus two armed police officers. One is pointing a gun at everyone. They are not, the police don't testify to any concern about these documents, and they are calling in other cars, and two patrol cars show up while the events are unfolding. By that time they had discovered the gun, though. Well by that time, though, there's nothing going on. I mean, Tiro Plaza isn't... The arrival of more policemen later on, it really doesn't make any difference as far as this issue is concerned, it seems to me. Well, but it goes to what the safety concerns were, actually, for the police at the time when they have patrol cars... The safety concerns are, they find a weapon, it's 11 o'clock at night, they're near a high crime area, as I recall. They're not near a high crime area. The district court actually did not find that. Did not find that. I could go through all the factors, but I, if your honor would like... No, that's all right. I'll read the record. All right, thank you. Thank you. Mr. Maxwell, good morning. Good morning, your honors. May it please the court, John Matthews on behalf of the United States. I'd like to begin where we left off with some of the other factors that the officers considered at that moment, because this was not a case of automatic, an application of automatic companion rule. Are you arguing for the automatic companion rule? Are you arguing for the automatic companion rule? No, your honor. In this case, we actually don't need the automatic companion rule because if we stick with the traditional... Is the automatic companion rule correct or incorrect? The government's position is that if we're describing the automatic companion rule as once a firearm is found on a driver of a vehicle and a passenger is in close proximity to that firearm, then yes, the police officers should be able to search, but in this case, we actually have more. If we look at the totality of the circumstances, this event occurred late at night. It was 11 p.m. The officers were outnumbered two to one, four officers to, excuse me, two officers as compared to four passengers in their vehicle. Your honor, you were correct that the other officers did not arrive until after Mr. Tiru Plaza was searched. In addition to that, all this is happening in the context of an island which has an amazingly high incidence of gun violence. But they weren't in a high crime area, right? We're not saying that at the moment of the stop they were in a high crime area, but there was testimony that at least when the officers first spotted the vehicle, they weren't that far from the Mount Block housing project, which is a high crime area. But when we look at the factors, including the fact that the driver was in close proximity to Mr. Tiru Plaza, it was late at night, the officers are outnumbered, the occupants of the vehicle are young, and the fact that both of these officers had extensive experience, one at 14 years of experience, one at 16 years, dealing with a very violent scene in Puerto Rico. You didn't list there the not pulling over immediately, so you agree that doesn't... Thank you, your honor. In addition to that, when the officers first spotted the vehicle and attempted to pull the vehicle over, the driver didn't immediately stop. But my understanding from the video is there was no shoulder on the road, that it was one lane in each direction, and that the only way to pull over was to go at the first exit, which is what they did, right? That I'm not sure about. I'm not sure about why they were reluctant to stop. Well, I think that's an accurate description of the video. You're not suggesting they should stop in the middle of the road, are you? No, your honor. I'm not suggesting that. So our position is that, in this case, the totality of the circumstances justified the officer's reasonable suspicion that Mr. Tiru Plaza was armed and dangerous. And I think if we step back and look at this situation, and the safety of both the officers and the occupants of the vehicle, this is a common sense approach. If you suddenly discover a driver that has a firearm, and the officer yells firearm, it's reasonable for the officer to assume that the other passengers in the vehicle may also be armed, and that there may be a threat to both the officers and the other passengers, in addition to any of the civilians that may be on the scene. And so, essentially, we just want to reject this notion. And the district court specifically rejected this notion that it was applying the automatic companion rule. It actually went through, step by step, the totality of the circumstances in this case. The magistrate judge, in this case, when it was assessing the totality of the circumstances, the magistrate judge primarily focused on Mr. Tiru Plaza's behavior. So there were no furtive movements, and there wasn't commotion in the car, and factors such as that. And we submit that that's not required in a case such as this. And this court, in Estrada, actually found that factors such as the number of occupants in the vehicle, lack of identification, and potential consequences of the passengers being arrested was sufficient for the officer, in that case, to conduct a stop. They didn't focus on the commotion happening in the vehicle, or the fact, and actually specifically found that the officer didn't notice any nervousness or specific movements with the occupants in that vehicle. In addition to that, the government would like to point out that in United States v. Cruz, this court actually found that it would be foolhardy for the officers to not pat first the occupants of the vehicle in that situation. Now granted, in that situation, there was commotion in the car. The driver was driving at an excessive speed, but it was a similar instance of late at night, a car full of, you know, occupants, the officer, it was one officer in that case, but he was outnumbered by the passengers. And it's a common-sense approach that says, once you have these factors, and especially if you have a firearm, one of the officers made a very good point about how you can distinguish this from the facts in the bar, where you have like a public tavern. There was no relationship between the subject in the tavern and the bartender who was being searched at the time. And that case was not dealing with a firearm, it was dealing with drugs. And so, if there are no further questions, the United States will rest on its brief. Thank you. Thank you. Ms. Barwell? Very quickly, I'm going to try to go backwards. The government mentioned the Cruz case, that involved the pat-down of the driver, the driver of course who was causing the problem, so that wouldn't apply here. The magistrate did not credit Ms. Rosado's testimony that the pursuit began in a high crime area, which is the Mont Blanc area, which my brother talks about. And the district court did not say anything at all about the Mont Blanc area or high crime area. Basically, the district court just kind of broke the tie by saying, well, all of Puerto Rico has this gun problem, and this crime has really increased. And so, for a matter of policy and precaution, I'm going to deny the motion to suppress. And then as far as when the patrol cars arrived, I would point this court to Record Appendix pages numbers 31, 44, and 84, that amply supports the magistrate's finding that the patrol cars came as the events were unfolding. Thank you, Your Honors. Thank you.